

**RECEIVED**

JAN 3 1 2019

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY_____

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

CLINTON STRANGE,

Plaintiff

5:19-cv-0119

Case No. 5:19-CV-_____-____-___

v.

FIVE STAR PROTECTION INC.;

a Texas For-Profit Corporation

REEMA SETH;

individually, and in the role as an

Officer of Five Star Protection Inc.

&

ANJU BHATIA,

individually, and in the role as an

Officer of Five Star Protection Inc.

Defendants

CIVIL ACTION:

FOR WILLFUL AND KNOWING VIOLATIONS OF:

THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

1

**Jury Trial Demand**

PRELIMINARY STATEMENT:

This is an action brought in good faith by an adult individual against Defendants FIVE STAR PROTECTION INC., a Texas For-Profit Corporation, herein ("Five Star"); REEMA SETH; individually, and in the role as an Officer of Five Star Protection Inc.; and ANJU BHATIA, individually, and in the role as an Officer of Five Star Protection Inc., herein are collectively the ("Defendants") for willful and knowing violations of parts of the Telephone Consumer Protection Act of 1991:

47 U.S. Code § 227(b)(1)(A)(iii)

&

47 U.S. Code § 227(c)(5)

The Plaintiff brings this private civil action to enforce the provisions of these laws in his own response, as a responsible citizen of both the State of Louisiana and the United States of America, to the overwhelming wide-spread public outrage about the proliferation of intrusive, disturbing, and absolutely annoying, nuisance telemarketing practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). The Plaintiff is seeking a maximum award for damages, and an enjoinder from further violations of the parts herein.

## JURISDICTION AND VENUE:

**Jurisdiction** lies properly in this court because the TCPA portion of the action involves a Federal Question pursuant to:

47 U.S. Code § 227(g)(2)

&

28 U.S. Code § 1331

**Venue** lies proper in this U.S. District Court pursuant to:

47 U.S. Code § 227(g)(4)

&

28 U.S. Code § 1391

## PARTIES:

**Plaintiff**, CLINTON STRANGE, is an adult individual residing at the address of:

CLINTON STRANGE

7021 WINBURN DRIVE

GREENWOOD, LA 71033

**Defendant** FIVE STAR PROTECTION INC is a Texas For-Profit Corporation, and whose registered agent is listed as:

ASHISH BHATIA

325 NORTH ST. PAUL STREET

SUITE 2170

DALLAS, TX 75201

**Defendant** REEMA SETH, is named individually, and in the role as an Officer of Five Star Protection Inc. Service is proper at the address of:

325 NORTH ST. PAUL STREET

SUITE 2170

DALLAS, TX 75201

3

**Defendant** ANJU BHATIA, is named individually, and in the role as an Officer of Five Star Protection Inc. Service is proper at the address of:

325 NORTH ST. PAUL STREET

SUITE 2170

DALLAS, TX 75201

———————————

[See Exhibit A]

**Factual Allegations:**

1. The Telephone Consumer Protection Act of 1991 "TCPA" states in part under subsection b:

    (b) Restrictions on use of automated telephone equipment(1) Prohibitions: It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-

    (i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

    (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called

party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

2. The Telephone Consumer Protection Act of 1991 states in part under subsection c:
(5) Private right of action: A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

3. The Defendants during the time period relevant to the complaint concocted a marketing campaign to increase sales of their "Award Winning Monitoring Services". The campaign promotion was to offer their goods and services of hardware, a color touch screen system, infrared motion detectors, free installation, window stickers, an insurance certificate, and a Yard sign (from Safeguard©) to consumers which would then be required to enter in to a contract with the Defendants for 36 months at a rate of $46.99 per month.

4. Under the TCPA, individuals such as Defendants SETH REEMA, and ANJU BHATIA may be held personally liable for TCPA violations under 47 U.S.C. § 227, which provides that "the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person." Id. (emphasis added). See also *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ([M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally

authorized the conduct found to have violated the statute.); *Maryland v. Universal Elections*, 787 F. Supp.2d 408, 415-16 (D. Md. 2011) (If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."). Also applicable to this argument is also *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 1333472 at *3 (N.D. Ohio Mar. 28, 2014).

5. Plaintiff has solely resided in the Western District of Louisiana since about 2004.

6. Defendant Five Star offers its goods and services (via unsolicited telemarketing through its Lead Generations Company agent) and engages in "contracts, agreements, and/or mises" with unsuspecting and vulnerable consumers within the State of Louisiana. The Western District of Louisiana comprises two-thirds of the entire state. Any entity conducting a targeted campaign of robocalls in the State of Louisiana could reasonably expect to be subject to the exclusive personal jurisdiction of the Western District of Louisiana [See Exhibit B].

7. The Plaintiff annoyed and aggravated by unwanted robocalls registered his cellular telephone number on the United States Federal Trade Commission's Do-Not-Call Registry on January 24,2018, and later Registered his cellular telephone number on the State of Louisiana Public Service Commission's Do-Not-Call Registry on August 2,2018 [See Exhibit C].

8. On August 16,2018 at 10:48am CST the Plaintiff answered a call made on behalf of the Defendants that was placed to his cellular telephone number without his consent. The call was made from 318-211-8514 utilizing an "Avatar" also referred to as "sound boarding" technology. The "Technology Application" introduced "itself" as James. The call was in reference to a home security system with a free yard sign for enrollment. Plaintiff told the "Avatar" at the end of the exchange to please stop calling. Plaintiff alleges that the call was placed to his cellular telephone using an automatic telephone dialing system "ATDS" and / or a pre-recorded voice. The Plaintiff

knows that an ATDS was being utilized because when he answered the call there was some faint clicking sounds and then the Avatar greeted itself as James. The Plaintiff knows that a pre-recorded voice Avatar was being utilized because some of the responses to questions he engaged the Avatar with in the course of the exchange were not relevant to the exchange between himself and the Avatar or were exact duplicate Avatar automated responses to a previous exchange that had occurred earlier in the conversation [See Exhibit D].

9. On August 17, 2018 at 10:16am CST the Plaintiff answered a call made on behalf of the Defendants that was placed to his cellular telephone number without his consent. The call was made from 318-211-8514 utilizing an "Avatar" also referred to as "sound boarding" technology. The "Technology Application" introduced "itself" as James. The call was in reference to a home security system with a free yard sign for enrollment. Plaintiff told the "Avatar" at the end of the exchange to please stop calling. Plaintiff alleges that the call was placed to his cellular telephone using an automatic telephone dialing system "ATDS" and / or a pre-recorded voice. The Plaintiff knows that an ATDS was being utilized because when he answered the call there was some faint clicking sounds and then the Avatar greeted itself as James. The Plaintiff knows that a pre-recorded voice Avatar was being utilized because some of the responses to questions he engaged the Avatar with in the course of the exchange were not relevant to the exchange between himself and the Avatar or were exact duplicate Avatar automated responses to a previous exchange that had occurred earlier in the conversation [See Exhibit E].

10. On November 6, 2018 at 9:32am CST the Plaintiff answered a call made on behalf of the Defendants that was placed to his cellular telephone number without his consent. The call was made from 870-214-5685 utilizing an "Avatar" also referred to as "sound boarding" technology. The "Technology Application" introduced "itself" as James. The call was in reference to a home

security system with a free yard sign for enrollment. Plaintiff told the "Avatar" that a representative of the company could call him back regarding a home security system because the last 20 times his request to not be called were ignored, and he felt that the best way to end the calls was to speak to someone "higher-up". The Avatar told the Plaintiff that a representative would call him within an hour[See Exhibit F].

11. On November 6,2018 at 10:28am CST a representative of the Defendants called the Plaintiff from 214-396-3328 regarding his home security system needs. During the course of the conversation the Defendants agent provided the Plaintiff with a website for the Defendants and confirmed the address of the company on behalf of which these robocalls were being made. The Plaintiff recorded the second half of the conversation and later transcribed it [See Exhibit G].

12. The Plaintiff phoned the Defendants at the contact number provided on their website. He described the experience that he had with the unwanted robocalls, and provided his cellphone number to the Defendants, and asked to not be called any more by them. The Plaintiff did not get any more home security system robocalls after that conversation.

13. All the phone numbers that the Defendant's agency employed in their campaign of illegal robocalls to the Plaintiff's cellular telephone used a "spoofing" tool and /or other technologically deceptive means to conceal the true geographical location from which the calls were really originating. The phone calls were on some occasions "spoofed" to appear as though they were local (neighbor spoofed).

14. The Plaintiff knows that the illegal robocalls calls made to the Plaintiff's cellular telephone was "transmitted" using technology capable of generating thousands of similar calls per day. The calls were generated from what is called an Automatic Telephone Dialing System, or "ATDS".

15. The calls that Plaintiff answered were also made or initiated using a technology known as "predictive dialers". The Plaintiff knows this because on many occasions of the robocalls he received from the Defendants agents there would be a momentary pause lasting 3 or more seconds before the Avatar technology engaged the Plaintiff in an exchange.

16. Some U.S. District Courts outside of the Fifth U.S. Circuit order that damages be awarded for TCPA violations to be both stacked and trebled particularly when the conduct is egregious as in this instant case before this U.S. District Court as for example, in *Charvat v. NMP, LLC.*, No. 10-3390 (6th Cir. 2011).

17. Plaintiff has received LOTS of robocalls from the Defendants' Lead Generations Company agency. He does not know exactly how many, but the Defendants can contact their Lead Generations Company to determine the exact number, or alternatively the Lead Services Generation Company can be named as a Defendant in an Amended Complaint and be subpoenaed for the records.

18. Plaintiff is the sole user of the cellular telephone number 318-780-8946 and is the only person responsible for paying on the Verizon wireless account. The Plaintiff has personally been paying on the account in his name since about January,2018. The Plaintiff alleges that he incurs charges for calls as that issue has been defined by other U.S. District Courts.

19. None of the Defendants named in this action have ever had the Plaintiff's prior express written consent to call the Plaintiff either via Live-Voice calls, or via calls placed via or utilizing an ATDS or pre-recorded voice prior to November 6,2018 at 9:33am CST.

20. On May 12, 2017 pursuant to a D.C.District Court ruling all telemarketing outfits utilizing Avatars a/k/a Sound boarding technology could be held liable under Federal Regulatory guidelines regarding the use of a pre-recorded voice in their telemarketing activities. This ruling

applies to this action because even if the "Spoofed" calls placed to the Plaintiff's cellular telephone were not made using an ATDS they certainly were made using what the D.C. District Court has ruled are Pre-Recorded Messages under the TSR. See *Soundboard Ass'n v. FTC* No 1:17-CV-00150 (D. D.C. Apr. 24, 2017).

21. The Defendants have no prior Established Business Relationship with the Plaintiff.

22. The calls placed to Plaintiff's cellular telephone were not made for an emergency purpose. They were all made to promote the Defendants' goods and services, and constituted telemarketing.

23. Technical and procedural standards specific to automated calls are included in § 227(d) and accompanying regulation 47 C.F.R. § 64.1200(b), which do not provide a private right of action or a statutory-damages provision. They can be however alleged as to the conduct of a Defendant in establishing a pattern of violative behavior worthy of treble damages.

24. Recovery of damages for the two separate provisions does not upset Congress's balance in setting damages "'fair to both the consumer and the telemarketer.'" See *GVN Mich.*, 561 F.3d at 632 n.8 (quoting 137 Cong. Rec. S16,204, S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).

25. The U.S. District Court for The Western District of Louisiana is under the Fifth U.S. Circuit Court of Appeals. The Fifth Circuit and the Sixth Circuit are "sister circuits". In certain cases, the Courts in one District Court will look to other court rulings in how best to rule on a matter. Such cases come up from time to time as decisions are reached, and courts will cite which circuit courts are their "sister courts". In one case for example the court ruled as thus…"Our sister circuits have differed on this issue. While some have said that the burden of proving withdrawal always rests on the defendant,[citing the Second, Fifth, Sixth, Tenth and Eleventh Circuits],others have held that, once the defendant meets his burden of production that he has

withdrawn prior to the relevant limitations period, the burden of persuasion shifts to the government [citing The First,Third,Fourth,Seventh and Ninth Circuits]... Quoting from *United States v. Moore*, 651 F.3d 30,90 (D.C. Cir. 2011)(per curiam)(holding "that the defendant bore the burden of persuasion to show that he withdrew from the conspiracy outside of the statute of limitations period"),aff'd,133 S.Ct. 714 (2013).

26. The calls made to Plaintiff's cellular telephone that concealed the geographic location from which the calls originated violated disparate parts of the Truth In Caller ID Act as amended to the Telephone Consumer Protection Act.

27. The Plaintiff was the "called party" in the targeted campaign of illegal robocalls placed to Plaintiff's cellular telephone number by the Defendant's agent.

28. As referenced Plaintiff has received and can document way beyond a reasonable doubt that he has received 2 or more phone calls on behalf of the same entity within a 12-month period in violation of subsection (c)(5) of The Telephone Consumer Protection Act of 1991.

29. Plaintiff does not like to receive unwanted commercially solicitous phone calls on his cellphone because they "intrude on his seclusion and violate his rights to privacy guaranteed under the U.S. Constitution", and further deplete plaintiff's memory storage capacity, deplete Plaintiff's battery level on his cellphone (amounting to a conversion Tort under Louisiana State Laws), and require him to use a measurable amount of both mental and physical energy to walk to his phone and answer the calls. Plaintiff alleges that he has Article III standing as a result of Defendants' agents alleged conduct.

30. Plaintiff alleges that it is a disconcerting business practice for any company that would seek to offer him home security products and services by unscrupulous means that violate his privacy, convert and trespass on his chattel, and rob him of his time, energy and concentration.

31. The website for the Defendants appears to now be "shutdown" as of January 29,2019. The Plaintiff last visited the page on November 6,2018 as referenced in paragraphs 13 and 14 [See Exhibit H].

32. Plaintiff is not alone in his allegations pertaining to the conduct of the Defendants herein. Others have complained about the behavior and conduct of the Defendants on both Social Media Platforms such as Facebook and Twitter, and also on whycall.me , a consumer telemarketer complaint website [See Exhibit I].

33. In the event of Default, the Plaintiff, based on the overwhelming *prima facie* evidence against the Defendants should be awarded the maximum amount of Trebled and Stacked Statutory Damages under the Telephone Consumer Protection Act of 1991 in the amount of $9,000.00. Plaintiff calculates this figure based on 3 documented phone calls initiated to his cellular telephone number in violation of both subsections b, and c of the TCPA equaling 6 willful and knowing, and intentional violations of the TCPA by their agents of which evidence will show the Defendants knew of.

34. Defendants will be able to provide unprivileged email communications with the Lead Generations Company regarding the complaints encountered at various times before during and after the marketing campaign that proved they knew about the violative activities of the agency that they engaged.

35. Defendants were and have been liable to the Plaintiff for damages under the Telephone Consumer Protection Act. The Court should calculate and appropriately award Plaintiff both pre and post judgement interest on the judgement awarded by the Court from the date that the Court determines the Defendants were first liable to the Plaintiff for damages.

36. At all times pertinent hereto Defendants were acting by and through their agents, servants and / or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

37. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/ or employees was intentional, reckless, and in grossly negligent disregard for Federal Laws and the rights of the Plaintiff herein.

### THE COUNTS:

### COUNT I:

### (Plaintiff v. All Defendants)

### WILLFULL AND KNOWING VIOLATIONS OF THE

### TELEPHONE CONSUMER PROTECTION ACT OF 1991

### 47 U.S. Code § 227(b)(1)(A)(iii)

38.. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

39. At all times pertinent hereto the Defendants were liable to the Plaintiff for violations of:

> The Telephone Consumer Protection Act 47 U.S.C. § 227(b)(1)(a)

Which makes Defendants liable to Plaintiff for at least 3 violations as evidenced in the complaint and Plaintiff seeks between $500 and $1,500 in damages for said violations at the discretion of the court.

## COUNT II:

**(Plaintiff v. All Defendants)**

**WILLFULL AND KNOWING VIOLATIONS OF THE**

**TELEPHONE CONSUMER PROTECTION ACT OF 1991**

**47 U.S. Code § 227(c)(5)**

40. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

41. At all times pertinent hereto the Defendants were liable to the Plaintiff for violations of:

   Telephone Consumer Protection Act 47 U.S.C. § 227(c)(5)

   Which makes Defendants liable to Plaintiff for at least 3 violations as evidenced in the complaint and Plaintiff seeks between $500 and $1,500 in damages for said violations at the discretion of the court.

**Jury Trial Demand;**

Plaintiff demands trial by jury on all issues so triable.

**Prayer for Relief;**

WHEREFORE, Plaintiff seeks judgement in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

Statutory Damages;
Treble Damages;
Stacked Damages;
Pre and Post Judgement Interest;
Enjoinder from further violations of these parts;
Costs of litigating the action together along with all reasonable attorney's fees (if any) and court costs;
And such other and further relief as may be necessary, just and proper.

Respectfully Submitted,

X _Clinton Strange_     1-30-2019

Clinton Strange
Pro Se                                          Dated
7021 Winburn Drive
Greenwood, LA 71033
318-780-8946
parsmllc@gmail.com